```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
```

_____
                                   :
HENRY LAZO PALACIO,                :
                                   :  Civil Action No. 13-4269 (RMB)
          Petitioner,              :
                                   :
     v.                            :           **OPINION**
                                   :
UNITED STATES OF AMERICA,          :
                                   :
          Respondent.              :
_____:

**BUMB**, District Judge:

   This matter is before the Court upon a motion ("Petition") of Henry Lazo Palacio ("Petitioner") who seeks to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.[1]  For the reasons detailed below, this Court will deny the Petition and decline to issue a certificate of appealability.  However, the Court will retain temporary jurisdiction over this matter so as to allow Petitioner an opportunity to explain, if he so desires, how the claim injected in this matter through his traverse could be reconciled with his other averments and facts.  Since this claim

---

   [1] Petitioner's real name is Henry Hernan Laz-Palasios.  <u>See</u> http://www.bop.gov/inmateloc/.  Also known as "Henry Lazo," he is facing removal proceedings upon his release from prison.

relates to Petitioner's request for an evidentiary hearing, this Court's decision as to such a hearing will be reserved.[2]

This case is yet another example of a litigation trend that has become the choice of those defendants who first plead guilty and execute broad waivers but then attack their convictions by asserting that their counsel omitted to inform them about the advantages and disadvantages of appeal during their plea process. "But every generation or so a case comes along when this Court needs to say enough is enough . . . ." Armour v. City of Indianapolis, 132 S. Ct. 2073, 2087 (2012) (Roberts, Scalia and Alito JJ., dissenting).

On May 12, 2011, the law enforcement officers seized about three kilograms of cocaine from a rental car driven by Petitioner and arrested him and another person, Rodolfo Antonio Terreros-Castro (a/k/a Rufino Terreros or Hally Zachino) who became Petitioner's co-defendant. See USA v. Lazo, Crim. Action No. 11-0850, Docket Entry No. 1. The next day, the Government filed a criminal complaint against Petitioner charging him with a violation of 21 U.S.C. § 846. See id. On December 12, 2011, he sought leave to plead guilty. See id., Docket Entry No. 25. His plea agreement stated, inter alia,

> My lawyer has explained to me, and I understand, that if I plead guilty . . . and the judge accepts my plea, I

---

[2] Petitioner was notified of his United States v. Miller, 197 F.3d 644 (3d Cir. 1999), rights. See Docket Entry No. 2.

2

> [would] waive my right to trial . . . .  I [also] understand that if I plead guilty, the judge may impose the same punishment as if I had pleaded "not guilty," went to trial and was convicted by a jury. . . .  My lawyer has informed me, and I understand, that the maximum punishment which the law provides for the offense[] charged . . . is . . . 40 years imprisonment and a fine of $5 million . . . .  My lawyer has further explained, and I understand, that there is a mandatory minimum punishment of 5 years imprisonment . . . . [Therefore,] I understand that if I plead guilty . . . , I face a maximum sentence . . . of 40 years imprisonment . . . .  I further understand that I have waived the right to argue that the sentencing judge should impose a sentence below the range [agreed to in the plea agreement] . . . .  I understand that my plea agreement provides that . . . I have waived my right to appeal or collaterally attack the sentence imposed . . . .  I believe my lawyer has done all that anyone could do to counsel and assist me, and I am satisfied with the advice and help my lawyer has given me.

Id. at 3, 5-6 (capitalization removed).

A schedule attached to Petitioner's plea agreement further stresses the same:

> The parties agree not to seek . . . any upward or downward departure, adjustment or variance not set [forth in the agreement]. . . . [Petitioner] knows that he has . . . waive[d his] right to file any appeal, any collateral attack, or any other writ or motion, including . . . a motion under 28 U.S.C. § 2255 . . . .

Id. at 9.

On August 15, 2012, Petitioner was sentenced to 70 months of imprisonment, i.e., the term at the bottom of the range agreed to in his plea deal. See id., Docket Entry No. 35.[3]

---

[3] Prior to sentencing, Petitioner informed this Court of his intention to seek a so-called "minor role" adjustment, but – being notified by the Government of its intent to counter that application with evidence that he was "an organizer, supervisor

3

On July 12, 2013, he filed the Petition at bar. <u>See</u> Instant Matter, Docket Entry No. 1. Here, he asserted that, during his plea process, his counsel must have violated his rights since "counsel [neither] advised Petitioner of the advantage [and] disadvantage in taking [an appeal], nor . . . asked Petitioner if he wanted to appeal." <u>Id.</u> at 17-18.[4] Although Petitioner did not specify the remedy he was seeking, the gist of his Petition made it abundantly clear that he was aiming to invalidate his plea and the resulting conviction. <u>See</u> <u>generally</u>, Docket Entry No. 1. Working toward that end, he cited <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000), joined that citation with a discussion of the general principles set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and arrived at the conclusion that, since, "before [Petitioner's] signing the plea agreement, counsel did not advise Petitioner of the advantages and disadvantages of taking an appeal . . . counsel's performance was objectively unreasonable to meet the . . . requirement of [<u>Flores-Ortega</u>]" and "counsel's deficient

---

or manager of [his] drug trafficking organization" and should have had his sentence enhanced – he elected not to seek a "minor role" adjustment. <u>See</u> <u>Lazo</u>, Crim. Action No. 11-0850, Docket Entry No. 28. Similarly, he initially moved for a downward departure below the range agreed to in his plea deal but, being notified by the Government of its intent to withdraw the plea offer on the grounds of Petitioner's attempted breach, he also withdrew that motion. <u>See</u> <u>id.</u>, Docket Entry No. 32.

[4] Petitioner also attached an affidavit stating that his "[c]ounsel['s] only conversation was [to the effect] that the term of imprisonment [negotiated in the plea deal] was fine and [thus] an appeal was not needed in this case." <u>Id.</u> at 18.

performance [must have] caused the forfeiture of Petitioner's right to appeal" resulting in what Petitioner perceived was a violation of his rights under Strickland.[5]  Docket Entry No. 1, at 18-19 (brackets omitted).  Detailing the prejudice he suffered, Petitioner stated that, "[h]ad counsel advised [him] of the advantages and disadvantages of an appeal, . . . Petitioner would have rejected the clause in the agreement [that] contained a waiver to appeal [and would have accepted only the remainder of the plea offer], and Petitioner would have [then] filed an appeal to . . . the sentence imposed."  Id. at 19.  While Petitioner did not

---

[5]  In Flores-Ortega, a defendant pled guilty to murder charges in the state court.  At sentencing, his judge advised him that he had sixty days to appeal.  While the defendant's counsel wrote "bring appeal papers" in her file, no notice of appeal was filed with the state court within that time.  The defendant's later attempt to file such notice was denied as untimely.  He then filed a § 2254 petition, alleging ineffective assistance of counsel on the basis of her failure to file the notice of appeal after she promised him to do so.  The district court denied habeas relief, but the Ninth Circuit reversed pointing out that counsel's election not to file a notice of appeal was without obtaining the defendant's consent to that change in the original plan.  The Supreme Court affirmed, holding that defense counsel has a constitutionally imposed duty to "consult" with her client about an appeal if: (a) counsel has a reason to think that a rational person being in the defendant's position would want to appeal; or (b) the defendant, in fact, manifested his wish to proceed with an appeal. Clarifying the meaning of the word "consult" for the purposes of the aforesaid analysis, the Court stated: "We employ the term 'consult' to convey a specific meaning [i.e.,] advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  Flores-Ortega, 528 U.S. at 996. The word "consult" has resulted in much litigation, including the within case.

explain how he would benefit from such an appeal, he nonetheless asked this Court "to hold an evidentiary hearing" so as to determine "whether or not the . . . requirement of Roe [v. Flores-Ortega] has been met" and promised to re-aver, at such a hearing, that counsel's statements about the appellate process consisted of only the sentence noted in Petitioner's affidavit. Id.; see also supra, this Opinion, n.4.

Understandably confused by Petitioner's stitching of Strickland to Flores-Ortega, Respondent: (a) asserted that "Petitioner must show that, but for his trial attorney's alleged ineffectiveness, he would have likely received a lower sentence"; (b) quoted from Petitioner's plea colloquy during which this Court asked, inter alia, "Did you discuss with your attorney this waiver of appeal and [this] waiver of your right to file a collateral attack," and Petitioner responded with, "Yes, [Y]our Honor"; and (c) posed that Flores-Ortega "has no application [here simply because] Petitioner is not complaining that counsel did not file an appeal."  Docket Entry No. 7, at 9-18.  While, as detailed infra, Respondent's legal position is flawed, its outcome is correct.[6]

---

[6] In addition, Respondent concluded, not unreasonably, that Petitioner was trying to withdraw his guilty plea and urged the Court not to allow him to do so.  To the extent the Petitioner aimed to withdraw his plea, Respondent's analysis is on point, and Petitioner cannot withdraw his plea.

Petitioner traversed by maintaining that, here, <u>Flores-Ortega</u> had to be the governing precedent "because [some, not specified,] Probation Officer's findings [were factored into his sentence as a ground for an] increase [in] Petitioner's base offense level [and] Petitioner communicated to [his] counsel . . . his wish to present a challenge to the aforesaid increase in the base level offense [either before this Court, at the sentencing stage,] and/or [to] appeal such increase." Docket Entry No. 8, at 3-4.[7]

Yet, simultaneously, Petitioner stressed:

> As indicated[] in his Section 2255 motion, Petitioner does not contend that his guilty plea was entered unknowingly or involuntarily[. N]either Petitioner contends the amount [of cocaine] attributed to him during the course of offense [sic]. Petitioner only contends that his counsel did not advise [him] of the advantages and disadvantages of the appeal . . . .

<u>Id.</u> at 3, n.3.

Thus, both the Petition and traverse make it clear that Petitioner invoked <u>Flores-Ortega</u> in support of his contention that assistance of any counsel necessarily violated a defendant's Sixth

---

[7] Petitioner's traverse cited, oddly enough, "¶3" of his affidavit. However, the affidavit stated nothing of the sort. <u>See</u> Docket Entry No. 1, at 28. It contained three paragraphs, the second and third of which were both marked as "paragraph 2." <u>See</u> <u>id.</u> The second "paragraph 2," which was, seemingly, intended to operate as "paragraph 3," reads: "Had counsel advised me, before [recommending that I sign the plea agreement with the waiver clause that obligated me] to waive my right to appeal, of the advantages and disadvantages of an appeal, I would have rejected the clause in the [plea] agreement to waive my right to appeal [and would have accepted only the remainder]." <u>Id.</u>

Amendment rights unless counsel utters certain words amounting to the notice as to the advantages and disadvantages of the appellate process.

To correct a defendant's sentence pursuant to § 2255, the court must find "that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the petitioner as to render the judgment vulnerable to collateral attack." Garcia v. United States, 2008 U.S. Dist. LEXIS 29298, at *4 (D.N.J. Apr. 9, 2008) (internal quotation and citation omitted).

Since the defendant who pleads guilty waives all his pre-plea and plea-unrelated claims, his § 2255 motion must be limited to an attack on the plea itself or on the assistance of counsel provided in connection with that plea. See United States v. Broce, 488 U.S. 563, 569 (1989); see also Mabry v. Johnson, 467 U.S. 504, 508-09 (1984); see also Tollett v. Henderson, 411 U.S. 258, 267 (1973) (the defendant who has pled guilty, "may . . . only attack the *voluntary and intelligent character* of [his] guilty plea" by challenging that plea directly or showing that counsel's assistance caused him to enter that plea involuntarily or unknowingly) (emphasis supplied); accord Hill v. Lockhart, 474 U.S. 52, 58 (1985).[8]

---

[8] Analogously, where a defendant executes a waiver, it is binding unless the defendant states an ineffective assistance of

Rendered against the backdrop of these core principles lies the seminal two-prong test set forth in Strickland. Under its first prong, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness. See id. at 688. Under its second prong, he must establish prejudice caused by his counsel's deficient performance. See id. at 692-93; see also Knowles v. Mirzayance, 556 U.S. 111 (2009). While, under this seminal test, the second prong merely calls for a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," Strickland, 466 U.S. at 694, its criterion differs within the context of the defendant's attack on his guilty plea. In that scenario, the second-prong inquiry "focuses on whether

---

counsel claim that relates to the defendant's core decision to plead guilty to the terms offered in the plea agreement. See United States v. Corso, 549 F.3d 921, 931 (3d Cir. 2008) (where the defendant executed a plea agreement containing a waiver that read, "[the defendant] waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any collateral proceeding attacking his conviction or sentence," any error in computation of his sentence cannot constitute a miscarriage of justice, because a claim based on such error would improperly "focus[] on the result of the proceeding, rather than the right [to proceed to trial] relinquished" by the defendant) (quoting United States v. Smith, 500 F.3d 1206, 1213 (10th Cir. 2007), quoting United States v. Hahn, 359 F.3d 1315, 1326 n.12 (10th Cir. 2004)). So, if computation errors are alleged, "such errors cannot justify setting aside an appellate waiver because allowing alleged errors in computing a defendant's sentence to render a waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive." Id. (quotation marks and citation omitted).

9

counsel's . . . performance affected the outcome of the plea process." Hill, 474 U.S. at 58-59. Thus, to meet the second prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he *would not have pleaded guilty* [*at all*] *and* [*instead*] *would have insisted on going to trial*." Id. (emphasis supplied); see also United States v. Orocio, 645 F.3d 630, 638 (3d Cir. 2011).

Moreover, where the defendant does not deny the crime he pled guilty to, such "failure to disavow those charges supports a finding that he would have been convicted had the case gone to trial" and, thus, the court may presume that his guilty plea did not result in prejudice. Cedeno v. United States, 455 F. App'x 241, 245 (3d Cir. 2011) (citing Premo v. Moore, 131 S. Ct. 733, 745 (2011), for the observation that a defendant's failure to deny involvement in the underlying crime "counsels against a finding of prejudice").

In other words, within the context of a guilty plea, the test articulated in Strickland, as refined in Hill and Tollett, is a straightforward inquiry into the threshold choice made by the defendant between his two mutually-exclusive options, i.e.: (a) to accept the plea deal offered (if it is offered at all); or (b) to proceed with the judicial proceedings consisting of the trial process and appeal. Cf. Stokes v. DA, 247 F.3d 539, 542 (3d Cir. 2001) (the process of direct review implies *all three* stages

10

of judicial proceedings) (citation omitted). Granted that these two options are mutually exclusive, the defendant cannot "mix-and-match" them, e.g., by accepting the plea deal as to the offense-related clauses but rejecting it as to the appeal-related clauses. This is so because each plea deal is an indivisible, fully integrated contract. See, e.g., Davis v. Russell, 2012 U.S. Dist. LEXIS 183219, at *2 (W.D. Wash. Nov. 23, 2012); United States v. Cooke, 8 M.J. 679, 684 (N.C.M.R. 1979). It follows that a defendant's refusal to accept even a single clause in his plea agreement (or his breach of even a single clause) necessarily invalidates the plea deal at issue in its entirety.[9] Thus, a

---

[9] As any contract, a plea deal is amenable to novation, but such novation is achievable only by a *new and superceding* plea deal, which the prosecutor may elect not to offer at all. "The prosecutor is under no duty to plea bargain — if no offer is made, the defendant [cannot demand a plea bargain and should proceed] to a trial." United States v. Gonzalez, 918 F.2d 1129, 1134 (3d Cir. 1990) (internal quotation marks and citation omitted); see also Government of Virgin Islands v. Scotland, 614 F.2d 360 (1980) (generally, until/unless the defendant actually accepts the plea deal, the Government can always withdraw its plea offer, and the defendant cannot compel a reinstatement of the withdrawn plea deal since he has no right to compel specific performance until/unless he has relied on the deal to his detriment). If the defendant is offered a plea deal with a broad appellate waiver but wants to keep the appellate rights wholly intact or preserved in part, he can, at most, inquire about the Government's willingness to offer a new deal and hope to get a new offer without a waiver or with a narrower waiver. The defendant's counsel is not obligated to seek a plea offer if the Government did not extend it or withdrew it. See Welch v. United States, 370 F. App'x 739 (7th Cir. 2010) (counsel has no obligation to pursue plea negotiations); United States v. Osif, 789 F.2d 1404, 1405 (9th Cir. 1986) ("a defendant does not have a constitutional right to a plea bargain"); United States v.

defendant's claim that he accepted his plea deal only "in part" is without merit.

The Supreme Court provided guidance that to invalidate a guilty plea a defendant must establish a reasonable probability that: (a) but for his counsel's errors, he would not have pleaded guilty *at all* and, instead, would have *insisted* on resorting to judicial proceedings, see Hill, 474 U.S. at 58-59; and (b) had he chosen judicial proceedings, he would have fared better than under the plea deal he seeks to invalidate. Accord Cedeno, 455 F. App'x at 245.

Here, in this context, a defendant may select judicial proceedings over the plea option in hope that he would fare better after the appeal – not trial – in comparison with the offered plea deal.[10] For the purposes of such "focus-on-appeal" analysis, the considerations articulated in Flores-Ortega might be relevant, but only if the defendant: (a) actually considers whether to take the plea over the route of judicial proceedings, including the

---

Cabaccang, 2010 U.S. Dist. LEXIS 75813 (D. Guam July 28, 2010) (counsel did not violate the defendant's rights by failing to seek a plea bargain or to obtain a "better" plea bargain).

[10] Such a situation could conceivably arise, for example, if the defendant doubts the correctness of the trial court's pre-trial rulings. In such a scenario, the defendant might have little hope to fare better at his trial (in comparison with the plea offered) but he might still reject the plea deal and elect in favor of the judicial proceedings, placing his hopes on an appeal.

appellate stages; and (b) actually manifests this thought to his counsel (or it is self-evident to counsel that a rational defendant would place his hopes on an appeal). In such a limited scenario, Supreme Court jurisprudence suggests that counsel would have a duty to consult with the defendant about the advantages and disadvantages of the relevant stage of the appellate process. See Flores-Ortega, 528 U.S. at 996.

Petitioner's position asking this Court to adopt an absolute rule requiring an automatic discussion of advantages and disadvantages of appeal, no matter what the circumstances are, is incompatible with and flies in the face of Strickland. Nothing in Strickland allows putting form over substance; nothing allows for a check-mark approach. See generally, Strickland, 466 U.S. 668.

> [a] criminal defense lawyer is not under a per se constitutional obligation to consult with his or her client about an appeal. In some cases, the Sixth Amendment requires such consultation; in others, it does not. "We cannot say, as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." Flores-Ortega, 528 U.S. at 479. The Supreme Court has rejected a bright-line rule in this context because such a rule would be "inconsistent with Strickland's holding that 'the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" Id. at 478.

Otero v. United States, 499 F.3d 1267, 1270 (11th Cir. 2007).

The court in Otero, being presented with a position largely analogous to that raised by Petitioner, rejected it.

13

> Here, [the petitioner's] conviction was the result of a guilty plea, which tends to indicate that he was interested in "seeking an end to judicial proceedings." [H]is lawyer advised [him merely] that he would probably receive a sentence within [a certain] range . . . and that there would be no promising appeal of such a sentence. After receiving and understanding this advice, [the petitioner] explicitly agreed as part of his guilty plea to waive the right to challenge on appeal [all aspects of his deal, sentence included]. In answering the question of whether a rational defendant would want to appeal his sentence, it is relevant to ask whether there are any potential non-frivolous grounds for appeal, whether there was a guilty plea, and whether the plea expressly waived the right to appeal. All those factors weigh heavily in favor of the government in this case. The plea agreement . . . contained a typical appeal-waiver provision, pursuant to which [he] "expressly waived the right to appeal his sentence, directly or collaterally, on any ground." . . . Therefore, . . . any appeal . . . would have been frivolous and would have been an appeal that no rational defendant would have taken. . . . Because no rational defendant in [this] position would have sought to appeal . . . , and because [he] did not communicate to his lawyer a desire to [proceed to] appeal, we conclude that [his] lawyer was not under a constitutional obligation to consult [him about the appellate process in general, and its advantages and disadvantages in particular].

Id. (brackets, footnote and Flores-Ortega citations omitted).[11]

---

[11] See also United States v. Matthews, 384 F. App'x 214, 218 (4th Cir. 2010) (where the petitioner "did not 'reasonably demonstrate' an interest in appealing . . . , his counsel had a duty to consult him only if a rational defendant in [his] position would wish to appeal. . . . Here, [the petitioner] pled guilty to the offense[] and . . . expressly and voluntarily waived his right to appeal. As a result of that agreement, [he] received a sentence [much] shorter than [what he could get after a trial. He] would gain nothing from an appeal. In fact, because any appeal would breach his . . . plea agreement, [he] would likely have received a longer prison sentence if he chose to file a notice of appeal. Surely, no rational defendant would have chosen to appeal when there was literally no upside – and potentially a significant downside – to doing so. Accordingly,

Persuaded by <u>Otero</u> and <u>Matthews</u>, this Court concludes that Petitioner's position, as stated, merits no habeas relief. In order to have a viable "focus-on-appeal" challenge under the <u>Strickland</u>-<u>Hill</u>-<u>Tollett</u>-<u>Flores-Ortega</u> analysis, Petitioner must state facts establishing *each* of the following three points: (1) Petitioner was contemplating a rejection of the plea deal (and meant to insist on taking the judicial proceeding route, including its appellate stages) and sufficiently manifested such intentions to his counsel (or, in the alternative, it was sufficiently obvious to counsel that a rational person in Petitioner's shoes would have pondered over the same dilemma); (2) because counsel did not explain to Petitioner the advantages and disadvantages of an appeal, such lack of information caused him to elect in favor of the plea unknowingly and involuntarily in the sense that, had he known about the advantages and disadvantages of an appeal, he would have insisted on judicial proceedings; and (3) had he proceeded to trial, and then to appeal, he would have fared better to the extent sufficient to establish prejudice under <u>Strickland</u>.

Petitioner's plea-related actions and testimony in the underlying criminal matter, as well as his averments made here, cannot be squared with any of these three points. Petitioner does not deny his guilt of the offense; thus, it is warranted for this

---

[here, the] attorney did not have a duty to consult with his client regarding an appeal.")

Court to presume that, had he elected in favor of judicial proceedings, he would have been convicted of the offense charged and faced up to 40 years in prison, i.e., almost seven times the period obtained under the plea. A rational person in his shoes would not have insisted on judicial proceedings and would have elected in favor of a plea.

The only plea deal offered here contained a broad appellate waiver. There is no indication that the Government was willing to offer Petitioner a deal without such a waiver or with a narrower waiver. Nor was the Government obligated to change its offer or even keep it open. Indeed, both of Petitioner's pre-plea attempts to change the terms of the deal in his favor endangered his chance of obtaining a plea bargain altogether to the point of the Government's statement of intent to withdraw the offer. See this Opinion, note 3. Hence, his insistence on preserving his appellate rights would have opened him to a 40-year sentence.

Not surprisingly, the underlying record is void of any indication that Petitioner contemplated the judicial proceedings option; rather, the record verifies that Petitioner consistently elected in favor of the plea option. Indeed, he: (a) signed his agreement and the attached schedule; and (b) appeared before this Court averring that his plea and his waiver of direct and collateral appellate rights was voluntary and knowing. Even now, he still insists that his guilty plea was entered voluntarily and knowingly.

16

And while his newly-minted position maintains that he would have preferred to plead guilty to his offense but not to the base offense level, such "in-part" option was never available to him, and he neither had the right nor the ability to force it.

Therefore, under the rationale of Strickland-Hill-Tollett-Flores-Ortega and the analysis provided in Otero and Matthews, Petitioner's counsel did not have the duty to detail to him the advantages and disadvantages of the appellate process. Simply put, even if Petitioner's statements in the Petition and affidavit are true, his rights could not have been violated by the limited scope of his counsel's appeal-related discussion.[12]

That being said, the Court takes notice of an obscure claim injected in this matter by Petitioner's traverse, i.e., "because [there were] the Probation Officer's findings [which were factored into the sentence as a ground for an] increase [in] Petitioner's base offense level [and] Petitioner communicated to [his] counsel . . . his wish [was] to present a challenge to the aforesaid increase in the base level offense [before this Court, at the sentencing stage,] and/or [to] appeal such increase." Docket Entry No. 8, at 3-4. Given the various allegations scattered among the Petition and traverse, this Court cannot rule out that Petitioner:

---

[12] Since no rational person in Petitioner's position would have risked a chance to obtain a favorable plea deal, counsel could not have reasonably surmised that Petitioner was interested in going to trial. Accord Flores-Ortega, 528 U.S. at 996.

17

(a) expressly "communicated to his counsel . . . his wish to present a challenge to the aforesaid increase . . . [on] appeal"; *and* (b) expressly verified his not-reasonable-under-the-circumstances willingness to accept the risk of losing the plea agreement. Thus, solely out of an abundance of caution, this Court will retain temporary jurisdiction over this matter so as to allow Petitioner an opportunity to file a written statement detailing the exact statements he made to his counsel and explaining how he reconciles these statements with the rest of his factual predicate.[13]

If Petitioner timely files his written statement, this Court will examine it to determine whether an evidentiary hearing is warranted as to his facts, as clarified. Correspondingly, this Court's determination as to whether an evidentiary hearing is

---

[13] In addition, Petitioner shall detail the circumstances under which he made the statements to his counsel as to his interest in challenging the increase in the base level offense on appeal at the risk of losing the plea deal. Petitioner shall also detail the exact errors in his probation report and the challenges he directed his counsel to raise as to these errors. Cf. United States v. Soto, 159 F. Supp. 2d 39, 48 (E.D. Pa. 2001) (if the defendant did not inform counsel why he wanted to challenge his pre-sentence report, the court "cannot fault counsel for not raising the issue"). Finally, he shall detail the prejudice he suffered by explaining how he would have fared better in the judicial proceedings, since neither his contention that he lost a chance to appeal nor his speculations that he might have fared better on appeal establish the requisite prejudice. Compare United States v. Knight, 266 F.3d 203, 207 (3d Cir. 2001) (finding defendant suffered "actual" prejudice where the defendant's criminal history score was erroneously calculated on the basis of his pre-sentence report, which wrongly attributed to him three criminal history points and thus caused him to be classified as a career offender).

warranted is reserved subject to resolution upon receipt and review of Petitioner's written statement, if filed.  Meanwhile, this Court will direct administrative termination of this matter.  See Papotto v. Hartford Life & Accident Ins. Co., 731 F.3d 265 (3d Cir. 2013) ("administrative closings . . . are a practical tool used by courts to prune overgrown dockets and are particularly useful in circumstances in which a case, though not dead, is likely to remain moribund").

    For the foregoing reasons, the Petition will be denied and no certificate of appealability will issue.  The Court will retain temporary jurisdiction to allow Petitioner an opportunity to file a written statement, if he so desires, and will reserve its decision as to the evidentiary hearing requested.[14]

    An appropriate Order follows.


                s/Renée Marie Bumb
                **RENÉE MARIE BUMB**
                **United States District Judge**

Dated: June 30, 2014

---

[14] Respondent will be allowed an opportunity to sur-reply.